UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Carlos Ruiz,

    Plaintiff

v.

Brian Williams, et al.,

    Defendants

2:14-cv-00412-JAD-CWF

**Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Countermotion for Summary Judgment**

[ECF Nos. 32, 34 ]

    Pro se Nevada state-prison inmate Carlos Ruiz sues Warden Williams and a pair of correctional officers for due-process and equal-protection violations stemming from his 2012 prison-disciplinary proceedings and resultant placement in disciplinary segregation. Defendants move for summary judgment, and Ruiz countermoves for summary judgment. I grant defendants' motion, deny Ruiz's,[1] enter judgment for defendants and against Ruiz, and close this case.

## Background

    On April 3, 2012, defendant Sgt. Carlman filed a written notice charging Ruiz with possession or sale of intoxicants.[2] This offense includes "an attempt or conspiracy to commit" the violation under the prison's regulations.[3] The charge stemmed from a lock-down and cell search after Sgt. Carlman received a tip the day before about a possible heroin deal between members of the "Surenos" and the "Paisas" who were working yard labor, where Ruiz was assigned. On April 19, 2012, a disciplinary hearing was held at which Ruiz pleaded not guilty and declined to call a witness.[4] Defendant hearing officer Stephen Torsky found Ruiz guilty of the charged offense and

---

[1] I find these motions suitable for disposition without oral argument. L.R. 78-1.

[2] ECF No. 32-3 at 2.

[3] ECF No. 32-4.

[4] ECF No. 32-3.

sanctioned him to six months in disciplinary segregation.[5]

Ruiz then filed this civil-rights complaint against Warden Williams and Sgts. Carlman and Torsky asserting three claims: "racial discrimination," "racial profiling," and "negligence/deliberate indifference."[6] In all three counts, Ruiz alleges that he was charged with possession or sale of intoxicants even though no drugs were found on his person or in his cell, found guilty, and sentenced to six months in administrative segregation and that only hispanic inmates are subjected to this type of treatment.[7] I screened Ruiz's complaint as required under the Prison Litigation Reform Act,[8] found that his allegations were best construed as claims for violations of due process and equal protection and permitted them to proceed, and I stayed this case for 90 days to allow the parties a chance to settle their dispute before discovery began or an answer was filed.[9] After twice extending the stay,[10] the parties notified the court that they were unable to reach a settlement. Discovery has now closed, and the parties have filed crossmotions for summary judgment.

## Discussion

**A.    Due-process requirements for prison disciplinary proceedings**

When a prisoner faces disciplinary charges that could result in disciplinary segregation, prison officials must provide the prisoner with (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal

---

[5] *Id.*

[6] ECF No. 6.

[7] ECF No. 7 at 2.

[8] 28 U.S.C. § 1915A(b).

[9] ECF No. 7.

[10] ECF Nos. 13, 15.

assistance where the charges are complex or the inmate is illiterate.[11]

In addition to these requirements, due process requires that there be "some evidence" to support the prison-disciplinary board's decision to place a prisoner in disciplinary segregation.[12] As the Ninth Circuit has explained, the "some evidence" requirement is met if "there is any evidence in the record that could support" the board's decision,[13] and a single piece of evidence may suffice if it is sufficiently reliable.[14] Thus, courts "do not examine the entire record, independently assess witness credibility, or reweigh the evidence,"[15] and the evidence need not "logically preclude[] any conclusion but the one reached"[16] by the board.

In his one-page countermotion for summary judgment,[17] Ruiz does not seriously deny that he was provided notice and an opportunity to be heard. Instead he maintains that there was not sufficient evidence that he possessed or sold narcotics, and that he "did nothing wrong at all."[18] The record reflects that Ruiz was given the required notice and opportunity to be heard. The record also reflects that there was "some evidence" to support the disciplinary board's decision.

**B.    Defendants are entitled to summary judgment on Ruiz's due-process claim.**

The notice of charges filed by defendant Sgt. Carlman states that on April 3, 2012, he received a tip about a possible heroin deal between gang members belonging to the Surenos and Paisas that were working on the yard-labor crew that afternoon.[19] Sergeant Carlman then obtained a

---

[11] See *Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974).

[12] *Bruce v. Yist*, 351 F.3d 1283, 1287–88 (9th Cir. 2003) (emphasis added).

[13] *Bruce*, 251 F.3d at 1287.

[14] *Id.* at 1288.

[15] *Bruce* at 1287.

[16] *Superintendent v. Hill*, 472 U.S. 445, 457 (1984).

[17] Ruiz did not file a response to defendants' motion for summary judgment.

[18] ECF No. 34 at 1.

[19] ECF No. 32-3 at 2.

list of all of the inmates scheduled to work on the yard-labor crew that afternoon and cross-checked that list to determine which, if any, inmates were validated members of the Surenos or Paisas.[20]  Sgt. Coleman then organized cell searches and searches of the validated members on the list;[21] a validated member of each gang was found in possession of black tar heroin.[22]  The heroin found on the Paisa member was discovered inside a small hidden pocket sewn into the inmate's pants.[23]  A search of Ruiz's property uncovered several small hidden pockets sewn into a pair of Ruiz's pants and into his elastic back brace.[24]

The prison-disciplinary hearing officer's decision is supported by "some evidence."  He relied on the fact that Ruiz was working on the yard-labor crew the afternoon when the tipster said that a drug deal would take place.  Ruiz was classified as a Paisa and, like the inmates on whose person the black tar heroin was actually found, he had several small, hidden pockets sewn inside his clothing.[25]  The offense of possession or sale of narcotics includes "an attempt or conspiracy" to commit the violation, so Ruiz did not need to be found in actual possession of narcotics to be adjudicated guilty of that offense.  Defendants have satisfied their burden on summary judgment, shifting the burden to Ruiz, who has not come forward with evidence to refute the conclusion that there was some evidence to support the hearing officer's decision.  Accordingly, defendants are entitled to summary judgment on claim one.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*; ECF No. 32-6; ECF No. 32-7.

[25] ECF No. 32-3.

**C.   Defendants are also entitled to summary judgment on Ruiz's equal-protection claim.**

The Prison Litigation Reform Act requires inmates to exhaust all available administrative remedies before filing "any suit challenging prison conditions."[26]  Failure to properly exhaust all available administrative remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove."[27]

The record reflects that Ruiz never filed any grievance complaining of racial or ethnic discrimination.  The only grievance that Ruiz filed relating to the April 2012 charges was his claim that there was insufficient evidence to support the evidence against him.[28]  Accordingly, Ruiz's equal-protection claim is barred by the PLRA because he failed to exhaust it.

Even if Ruiz had properly exhausted this claim, defendants would be entitled to summary judgment its merits.  To prevail on an equal-protection claim, a plaintiff must demonstrate that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[29]

The record reflects that Ruiz was not searched, charged, and disciplined because of his membership in a protected class; Ruiz was searched, charged, and disciplined because of the tip that Sgt. Carlman received, Ruiz's position on the yard-labor crew on the afternoon in question, and his status as a validated Paisa member:[30] he fit the suspect criteria.  Even if all Paisa and Sureno gang members are hispanic, there was a basis for the disparate treatment, and Ruiz does not allege or offer any evidence to show that a similar tip was made against gangs of different racial or ethnic makeups

---

[26] 42 U.S.C. § 1997e(a).

[27] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

[28] ECF No. 32-9.

[29] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[30] ECF No. 32-2 (record showing that on August 10, 2006, Ruiz admitted to being affiliated with the Paisa gang in his intake interview and that Ruiz's "SGT" (security threat group) status is Paisa).


that was not investigated like this one was. Therefore, Ruiz's equal-protection claim fails both because it is unexhausted under the PLRA and it lacks evidentiary support.

### Conclusion

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment **[ECF No. 32] is GRANTED**, and Ruiz's countermotion for summary judgment **[ECF No. 34 ] is DENIED.**

The Clerk of Court is directed to enter judgment for defendants and against Ruiz and CLOSE THIS CASE.

Dated this 19th day of December, 2016.

_____
Jennifer A. Dorsey
United States District Judge